**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| LUCAS CRANOR, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>5 STAR NUTRITION, LLC,<br><br>          Defendant. | Case No. 1:19-cv-00908-LY |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant 5 Star Nutrition, LLC ("Defendant" or "5 Star") respectfully moves to dismiss the Complaint ("Compl." or "Complaint") filed by Plaintiff Lucas Cranor ("Plaintiff" or "Cranor") in its entirety, because Plaintiff lacks standing to sue and because the Complaint fails to state a TCPA claim.

## INTRODUCTION

In this putative nationwide class action, former 5 Star customer Lucas Cranor complains of receiving *a single text message* he alleges was sent in violation of the Telephone Consumer Protection Act, 7 U.S.C. § 227 et seq. (the "TCPA").  Even assuming the text did constitute a statutory violation—which Defendant disputes—Plaintiff's purported "injuries" are insufficient to confer Article III standing.  In addition, Plaintiff fails to state a claim because he does not even attempt to allege, as required, that Defendant utilized an automated telephone dialing system (or "ATDS") to randomly or sequentially generate Plaintiff's telephone number.  Respectfully, the Court should dismiss the Complaint with prejudice.

## PLAINTIFF'S ALLEGATIONS

Defendant 5 Star Nutrition is an Austin-based company that operates a chain of retail stores selling vitamins and nutritional supplements.  Compl. ¶ 19.  Plaintiff is a Missouri resident.  *Id.* ¶ 16.  In June 2018, Plaintiff entered one of Defendant's stores and purchased certain products, and, in connection with that purchase, informed Defendant of his mobile phone number.  Exhibit A ("Mutual Release and Settlement Agreement" between Lucas M. Cranor and 5 Star Nutrition, LLC, dated November 29, 2018) at 1.[1]

Plaintiff states that Defendant sent him one unsolicited text message in June 2018 and in another in September 2018, for the purpose of advertising Defendant's rewards program and a sale.  *Id.* ¶¶ 21-22.  Plaintiff asserts that these messages were unlawful because he never gave express consent to receive them (*id.* ¶¶ 20, 24), but he resolved all purported claims with respect to these messages in a settlement agreement with Defendant.  Compl. ¶¶ 21-24; *see* Exhibit A.

Plaintiff states that on May 2, 2019, Defendant sent another "short code" text message to his cellular phone advertising another sale, without first obtaining his prior written consent.  *Id.* ¶¶ 25, 27.  According to Plaintiff, "short code" is a method "utilized to mass send texts automatically from lists of numbers."  *Id.* ¶ 28.  Plaintiff responded to this text message with  a "Stop" request (*id.* ¶ 26), and does not allege to have received any subsequent texts from Defendant.  Although he states that other, unidentified "cellphone users must frequently pay their respective wireless service providers … for each text message" received (*id.* ¶ 14), Plaintiff

---

[1] "In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 872 (W.D. Tex. 2016) (citation omitted).  Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

himself does not specifically claim to have incurred an incremental fee for the May 2, 2019 text. Instead, Plaintiff alleges that the text message depleted his cellular phone's battery life and "us[ed] minutes allocated to [him] by his cellular telephone service provider" (*id.* ¶ 31), but he does not attempt to quantify the battery depletion or explain any link between his receipt of the text message and the minutes allocated to him by his service provider.  Plaintiff also generally avers that the May 2, 2019 text message caused him harm by interfering with his rights in his cellular telephone, and that it intruded upon his seclusion.  Compl. ¶¶ 29-30.

On September 13, 2019, Plaintiff brought this putative nationwide class-action lawsuit, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), by sending a single text message[2] via an "automatic telephone dialing system" without his consent.

## LEGAL STANDARDS

Rule 12(b)(1) provides for the dismissal of an action upon a finding by the court that it does not have subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation omitted).  As the party invoking a federal court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists.  *Dow v. Agrosciences, LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003).  "Courts may dismiss for lack of subject matter jurisdiction on any one

---

[2] It goes without saying that the text messages Plaintiff allegedly received in June 2018 and September 2018 (Compl. ¶¶ 21-22) cannot form the basis for Plaintiff's instant lawsuit because, as he acknowledges, Plaintiff waived all claims related to those messages.  Compl. ¶ 24; Exhibit A.  *See Harris v. Progressive Ins., Inc*., No. 3:13-CV-3983-K, 2014 WL 712446 (N.D. Tex. Feb. 24, 2014) (entering summary judgment for defendant where plaintiff purported to file TCPA claims based on 28 "robo-calls" that were the subject of a previous settlement agreement).  The only other message Plaintiff alleges he received from Defendant is the May 2, 2019 text message.

of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must meet Rule 8(a)'s pleading requirements and allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Pursuant to this standard, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (alteration in original) (citation omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*

## ARGUMENT

## I.   Plaintiff Lacks Article III Standing to Assert His TCPA Claim

Not every statutory right is automatically enforceable in the federal courts.  Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  Art. III, § 2.  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 872 (W.D. Tex. 2016) (quotation omitted).  Thus, even when Congress appears to have granted jurisdiction by statute, a plaintiff still must demonstrate: (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant,

and (3) that is likely to be redressed by a favorable judicial decision.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In this case, Plaintiff has not met his burden of showing an injury in fact, so the Complaint must be dismissed for lack of subject matter jurisdiction.

      A.      Injury-in-Fact Requirement

The injury-in-fact requirement is the "'first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (internal quotation omitted).  To meet this element, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).  A concrete injury is required "even in the context of a statutory violation," and "a bare procedural violation, divorced from any concrete harm" will not suffice. *Spokeo*, 136 S. Ct. at 1540, 1549.

Concrete injuries include be either tangible or intangible.  *Id*. at 1549.  Where an alleged injury is intangible, the Supreme Court has laid out a two-part test to determine whether it is sufficiently concrete to confer constitutional standing.  *Id*.  First, courts should consider whether the alleged injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts."  *Id.*  Second, courts should consider Congress's judgment with respect to identifying the alleged intangible harm.  While "Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law," *id*. (quotation omitted), the injury-in-fact requirement "is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst*., 555 U.S. 488, 497 (2009).

5

B.     Plaintiff Fails to Allege a "Concrete" Injury in Fact

As the Eleventh Circuit recently concluded when presented with this exact scenario,[3] the

receipt of a single unwanted text message is "qualitatively different" than previously recognized

TCPA injuries and does not meet the Supreme Court's criteria for an Article III harm.  *Salcedo v.*

*Hanna*, No. 17-14077, 2019 WL 4050424 (11th Cir. Aug. 28, 2019).   The *Salcedo* court's

reasoning accords with Fifth Circuit precedent and squarely applies to this case.

1.     *Plaintiff's purported harm differs in kind from previously recognized TCPA injuries.*

The effects of receiving a single text message are qualitatively different than the types of

harms courts have previously addressed when adjudicating TCPA claims.  In particular, courts

have regularly acknowledged that unsolicited communications via fax or telephone have the real

potential to shift costs to the recipient (in the form of materials or usage fees) and to temporarily

occupy the recipient's fax machine or telephone, making it incapable of receiving other

messages—both concerns explicitly described by Congress when passing the TCPA.  *E.g.*, *Texas*

*v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1091 (W.D. Tex. 2000) ("Congress identified two

legitimate public harms addressed by the TCPA's ban on junk faxes: (1) unsolicited fax

advertisements can substantially interfere with a business or residence because fax machines

---

[3] In *Salcedo*, a former client sued an individual lawyer and his law firm claiming that the defendants violated the TCPA by sending an unsolicited text message to offer a discount on future legal services.  *Salcedo*, 2019 WL 4050424, at *1.  As here, the *Salcedo* plaintiff alleged that the text message "resulted in an invasion of [his] privacy and right to enjoy the full utility of his cellular device."  *Id.* at *3.  Mr. Salcedo further alleged—similar to Plaintiff—that the unwanted text message "slow[ed his] cell performance by taking up space on [his] phone's memory."  *Compare* Amended Complaint at ¶ 17, *Salcedo v. Hanna*, No. 16-CV-62480-DPG (S.D. Fla. Dec. 27, 2016), ECF No. 11 *with* Compl. ¶ 31.  Finally, like Cranor, the *Salcedo* plaintiff "allege[d] generally that some text messages cause recipients to incur costs to their wireless service providers, but has not alleged specifically that [the defendant's] text cost *him* any money."  2019 WL 4050424, at *8 (emphasis added).

generally can handle only one message at a time, at the exclusion of other messages; and (2) junk faxes shift nearly all of the advertiser's printing costs to the recipient of the advertisement."); *Sartin v. EKF Diagnostics, Inc.*,   2016 WL 7450471, *1, *4–5 (E.D. La. 2016) (referencing TCPA legislative history in which Congress noted that "consumers have identified, inter alia, wasted time and tied up machines as problems caused by unsolicited calls and faxes.") (citing S. Rep. No. 102-178, at 2 (1991)); *Jamison v. Esurance Ins. Servs., Inc.*, No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016) (discussing similarities in injuries caused by unwanted fax and telephone messages).

This reasoning does not extend to the consequences resulting from a single unsolicited text message.  To the extent courts have relied on tangible costs such as the consumption of paper, ink, or toner to establish injury in fact, Plaintiff cannot so rely, since "receiving a text message uses no paper, ink, or toner."  *Salcedo*, 2019 WL 4050424 at *8.  Relatedly, Plaintiff states without elaboration that the text message interfered with his use of his cellular phone and telephone line (Compl. ¶ 30), but he does not plausibly explain how a single text message could render his device unavailable when it is common knowledge that "[a] cell phone user can continue to use all of the device's functions, including receiving other messages, while it is receiving a message."  *Salcedo*, 2019 WL 4050424 at *9.  And while Plaintiff states in the abstract that some text messages cause recipients to incur incremental monetary costs, (Compl. ¶ 14) "he has not alleged specifically that [Defendant's] text cost *him* any money."  *Salcedo*, 2019 WL 4050424 at *9 (emphasis added).

2.    *The alleged harm does not rise to Article III injury under* Spokeo.

Having failed to allege any traditionally recognized TCPA harm, Plaintiff also does not meet the two-part "concreteness" framework outlined by the Supreme Court in *Spokeo, Inc. v. Robins*.  First, Congress's judgment on text messaging is ambivalent at best: the TCPA is

completely silent with respect to text messaging, and Congress has amended the statute multiple times without adding it to the categories of restricted telemarketing.  *See Salcedo*, 2019 WL 4050424 at *12 (noting that "congressional silence is a poor basis for extending federal jurisdiction to new types of harm.").  If anything, the legislative history indicates the TCPA was primarily concerned with protecting "privacy within the sanctity of the home"—a purpose with little application to text messaging.  *Id.* at *11-12 (citing Pub. L. No. 102-243, § 2, ¶ 5).  In fact, Congress has explicitly permitted the FCC to exempt free-to-receive telemarketing calls to cellular phones, further evidencing a focus on *at-home* privacy.  47 U.S.C. § 227(b)(2)(C); *see also Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 325 (3d Cir. 2015) ("In passing the [TCPA], Congress was animated by 'outrage[ ] over the proliferation' of prerecorded telemarketing calls to private residences.") (citation omitted).  Other stated concerns underlying the TCPA are equally inapposite to Plaintiff's allegations here.  For example, Congress found fax-telemarketing problematic in part because "it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."  H.R. Rep. 102-317, at 10 (1991).  As already noted, this concern has no application to the receipt of a single text message, which is "more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face."  *Salcedo*, 2019 WL 4050424 at *7.  In short, the judgment of Congress gives no support for recognizing the "injuries" alleged by Plaintiff.

The second factor, historical practice, also cuts against Plaintiff.  While he frames his injuries in the terminology of familiar torts, upon examination they do not bear a "close relationship" to traditionally redressable harms.  *Spokeo*, 136 S. Ct. at 1549.  For example, Plaintiff claims that the May 2, 2019 text message "intruded upon his seclusion" (¶ Compl. 30), but that tort requires the sort of invasion that would be "highly offensive to a reasonable person."

Restatement (Second) of Torts § 652B.  Plaintiff cannot credibly claim that a single text message meets this criterion.  *See id*. cmt. d (illustrating no liability for one, two, or three phone calls, but "only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff").  Similarly, Plaintiff's conclusory statements that the text message was a "nuisance," or that it interfered with the use of his cellular phone (Compl. ¶¶ 29-30), also fall far short of traditional standards of liability.  The tort of private nuisance requires an invasion of real property (Restatement (Second) of Torts § 821D), which is not alleged, and a trespass to chattel would require depriving Plaintiff of the use of his cellular phone "for a substantial time," or to such an extent that it harmed the phone's "physical condition, quality, or value."  *Id*. § 218(c) & cmt. e.  Plaintiff has not, and cannot, plausibly allege that the receipt of a single text message meets these thresholds.

In sum, even presuming the truthfulness of Plaintiff's claims, the "isolated, momentary, and ephemeral" effects of receiving a single text message, *Salcedo*, 2019 WL 4050424 at *7, are different in kind from the types of harm that have previously given plaintiffs standing to sue, and they are well outside the scope of harms the TCPA was meant to address.  These alleged injuries may indeed be "aggravating and annoying" to Plaintiff (Compl. ¶ 30), but that is not a sufficient basis to invoke the jurisdiction of the federal courts.[4]

---

[4] It also bears noting that Plaintiff has filed numerous putative class-action TCPA lawsuits using many of the same "stock" allegations, verbatim, that he now asserts in this action.  *See, e.g.*, Class Action Complaint, *Cranor v. The Zack Group, Inc*., No. 4:18-cv-00628-FJG (W.D. Mo. Aug. 14, 2018); Class Action Complaint, *Cranor v. Skyline Metrics, LLC*, No. 4:18-CV-00621-DGK (W.D. Mo. Aug. 13, 2018); Class Action Complaint, *Cranor v. Classified Advertising Ventures, LLC et al*., No. 4:18-cv-00651-HFS (W.D. Mo. Aug. 20 2018).  This track record reveals Cranor as a "professional plaintiff," who stands outside of the zone of interests the TCPA is designed to protect, which provides an independent basis for dismissal.  *See, e.g*., *Telephone Science Corp. v. Asset Recovery Solutions, LLC*, No. 15-CV-5182, 2016 WL 4179150, at *1 (N.D. Ill. Aug. 8, 2016); *Stoops v. Wells Fargo Bank, N.A*., No. CV 3:15-83, 2016 WL 3566266, at *12 (W.D. Pa. June 24, 2016).

## II.     Plaintiff's TCPA Claim Fails because He Does Not Allege the Use of a "Random or Sequential" Number Generator

The TCPA prohibits the use of Automatic Telephone Dialing Systems ("ATDS") to send non-emergency calls and texts to a cellular number without the called party's consent.[5]  Thus, to state a claim, a plaintiff must plausibly allege "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [or "ATDS"]; (3) without the recipient's prior express consent."  *Adams v. Safe Home Sec. Inc.*, No. 3:18-CV-03098-M, 2019 WL 3428776, at *1 (N.D. Tex. July 30, 2019) (citation omitted).  Here, Plaintiff fails to plead the second element because he does not even attempt to allege that Defendant used an ATDS to *randomly or sequentially* generate his number, which is a legal requirement in order to meet the definition of an ATDS, as will be discussed more fully below.  To the contrary, Plaintiff admits that *he provided his phone number to the Defendant*, which eliminates any possible inference that the number was "randomly or sequentially generated."  As a result, his TCPA claim fails as a matter of law and must be dismissed under Rule 12b(6).

### A.   Historical Definition of "ATDS" and Invalidation of FCC Interpretive Guidance

The TCPA itself defines an ATDS as "equipment which has the capacity—(i) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and (ii) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).  Consistent with the statute's text, the FCC "initially interpreted the [TCPA] as specifically targeting equipment that … randomly or sequentially generat[ed] the numbers to be dialed." *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369,

---

[5] Specifically, the TCPA makes it unlawful to "(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

372 (3d Cir. 2015).  Accordingly, the Commission early on declared that equipment with "speed dialing," "call forwarding," and "delayed message" functions are not ATDSs, "because the numbers called are not generated in a random or sequential fashion."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, ¶ 47 (1992). Later, the FCC explained that the ATDS definition does not encompass calls "directed to [a] specifically programmed contact numbe[r]," such as a customer calling list, but only "to randomly or sequentially generated numbers."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, ¶ 19 (1995).

However, in 2003 the Commission changed course and began to issue a series of rulings enlarging the definition of an ATDS to include a category of equipment called "predictive dialers." In brief, this expanded the definition of ATDS to cover any equipment that has the "capacity to generate numbers and dial them without human intervention **regardless of whether the numbers called are randomly or sequentially generated or come from calling lists**."  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15392 ¶ 2 n.5 (2012) (emphasis added).  This interpretation was reaffirmed in a 2015 FCC Declaratory Ruling and Order, which further broadened the definition to encompass any device with the mere "potential ability" to dial random or sequential numbers, even if it lacks the "present ability" to do so.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7972 ¶ 10, 7974 ¶ 15, 7975-76 ¶¶ 19-20 (2015) (internal quotation marks omitted).

In 2018, the D.C. Circuit unanimously invalidated the 2015 FCC Order as arbitrary and capricious upon the grounds that it failed to articulate a comprehensible test and was otherwise "utterly unreasonable in its breadth."  *ACA Int'l v. FCC*, 885 F.3d 687, 693, 701-03 (D.C. Cir.

11

2018).  The decision vacated the FCC's interpretive guidance on the definition of ATDS going back to 2003, leaving only the TCPA's statutory definition to guide the courts in adjudicating future claims.  *Adams v. Safe Home Sec. Inc.*, No. 3:18-CV-03098-M, 2019 WL 3428776, at *2 (N.D. Tex. July 30, 2019) ("Without any applicable FCC interpretations in place, the Court must independently interpret the statute to determine the scope of the definition of an ATDS.") (Lynn, C.J.)

B.     A Violation of TCPA § 227(b)(1)(A)(iii) Requires Use of Equipment with a Present Capacity for Random or Sequential Number Generation.

Construing the TCPA's plain text in the wake of the *ACA* opinion, most courts have adopted the FCC's original approach and determined that equipment qualifies as an ATDS only if it randomly or sequentially generates the numbers to be dialed.  *See*, *e.g.*, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (affirming no TCPA liability where system used to send texts was not shown to have "the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 475 (2d Cir. 2018) (ATDS determination turns on a system's capacity to make random or sequentially generated calls; the mere capacity to store numbers and dial them does not suffice.); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 938 (N.D. Ill. 2018) ("[A]n ATDS must have the capacity to generate telephone phone numbers, either randomly or sequentially, and then to dial those numbers."); *Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 2018 WL 6426677, at *2 (N.D. Ill. Nov. 29, 2018) ("Curated lists developed without random or sequential number generation fall outside the statute's scope."); *Fleming v. Associated Credit Servs.*, Civ. No. 16-3382 (KM) (MAH), 2018 U.S. Lexis 163120 (D. N.J. Sept. 21, 2018) (same); *Ramos v. Hopele of*

*Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262, 1262 (S.D. Fla. 2018) (same).[6]   While the Fifth

Circuit has yet to opine on this subject, the only district courts in Texas to address this question

post-*ACA* have likewise concluded that an ATDS "must store or produce randomly or sequentially

generated numbers." *Adams*, 2019 WL 3428776 at *3; *Reed v. Quicken Loans, Inc.*, No. 3:18-cv-

3377, 2019 WL 4545010, *2 (N.D. Tex. Sept. 3, 2019).

> C.   Plaintiff Does Not Allege the Use of Equipment with the Capacity to Generate
>      Random or Sequential Telephone Numbers.

Plaintiff repeatedly states in rote fashion that Defendant sent the May 2, 2019 text "using

an ATDS" (*e.g.* Compl. ¶¶ 1, 32, 35, 37).   But this is insufficient because Plaintiff nowhere alleges

that his telephone number was randomly or sequentially generated by Defendant.   This alone is

fatal to Plaintiff's claim. *Reed*, 2019 WL 4545010 at *2 (dismissing TCPA claims where "Plaintiff

avers the text messages were 'automated' [but] he does not plead that the text messages or phone

calls were 'placed with an ATDS that randomly or sequentially generated his number'");

*Cunningham v. TechStorm, LLC*, No. 3:16-CV-2879-M, 2017 WL 721079, at *2 (N.D. Tex. Feb.

23, 2017) (dismissing pre-*ACA* TCPA claim where plaintiff made "only speculative and

conclusory allegations that the calls originated from an automatic telephone dialing system").[7]

---

[6] Among appellate courts, only the Ninth Circuit has concluded that ATDS "is not limited to
devices with the capacity to call numbers produced by a 'random or sequential number generator,'
but also includes devices with the capacity to dial stored numbers automatically." *Marks v. Crunch
San Diego LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).   The only Texas court to directly address
the *Marks* case has expressly disagreed with its analysis and conclusions. *Adams v. Safe Home
Sec. Inc.*, No. 3:18-CV-03098-M, 2019 WL 3428776, at *3 (N.D. Tex. July 30, 2019) (Lynn, C.J.).

[7] Federal courts routinely dismiss conclusory TCPA claims like Plaintiff's. *See, e.g.*, *Jones v. FMA
All. Ltd.*, 978 F. Supp. 2d 84, 86 (D. Mass. 2013) ("A bare allegation that defendants used an
ATDS is not enough.") (internal citations omitted); *Rhinehart v. Diversified Cent., Inc.*, No. 4:17-
CV-624-VEH, 2018 WL 372312, at *8 (N.D. Ala. Jan. 11, 2018) (dismissing TCPA claim when
plaintiff failed to plead any facts plausibly establishing that alleged calls were made using an
ATDS); *Douek v. Bank of Am. Corp.*, No. 17-2313, 2017 WL 3835700, at *2 (D.N.J Sept. 1, 2017)
(dismissing TCPA claim when plaintiff provided no factual allegations to support whether the calls
or text messages were automated); *Baranski*, 2014 WL 1155304, at *6 (dismissing TCPA claim

Nor could Plaintiff address this deficiency by amending his Complaint.  The pleadings establish that Plaintiff *himself* provided Defendant with his cellular phone number in connection with an in-store purchase (Exh. A at 1), which eliminates any possible inference that Defendant randomly or sequentially generated his telephone number.

The single fact Plaintiff provides in support of the ATDS element is that the text "was sent from a short code," which he claims "is utilized to mass send texts automatically from lists of numbers."  Compl. ¶ 28.  This description of short code is unsupported by any factual basis, but even assuming this statement were true, it would have no bearing on the question of whether Defendant *randomly or sequentially* generated Plaintiff's telephone number, which is the determining factor in defining ATDS.   Indeed, "send[ing] texts automatically from lists" of stored numbers, (Compl. ¶ 28), is precisely the type of function that courts have deemed insufficient to constitute an ATDS.  *See Adams*, 2019 WL 3428776 at *4 (finding that the statute does not "cover devices that merely dial any stored number") (Lynn, C.J.); *see also,* Part II.B *supra*.  Because Plaintiff fails to plausibly allege the use of ATDS, his TCPA claim must be dismissed.  *Reed*, 2019 WL 4545010 at *2.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court to grant its motion and dismiss the Complaint in its entirety with prejudice for lack of standing and failure to state a claim.

---

for failure to allege ATDS element); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H(WVG), 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (dismissing TCPA claim based on alleged text message for failure to plead use of random or sequential number generator); *Trenk v. Bank of Am.*, No. CV 17-3472, 2017 WL 4170351, at *2-3 (D.N.J. Sept. 20, 2017) (dismissing TCPA claim for failing to allege sufficient facts about calls and for failing to offer facts in support of bare allegation that calls were made using an ATDS: "The Court need not take Plaintiff's conclusory assertion that Defendant used autodialing as true").

Date:  October 9, 2019                    Respectfully submitted,


**SHEARMAN & STERLING LLP**
David P. Whittlesey
Texas Bar No. 00791920
david.whittlesey@shearman.com
111 Congress Ave., Suite 1700
Austin, TX 78701
Tel.: (512) 647-1900

**ATTORNEYS FOR DEFENDANT
5 STAR NUTRITION, LLC**

## CERTIFICATE OF SERVICE

I certify that on October 9, 2019, this document was filed electronically via the Court's

CM/ECF system and sent by electronic mail to Plaintiff's counsel below:

Ben Bingham
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, TX 78212
Ben@Binghamandlea.com

Keith J. Keogh
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, IL 60603
keith@keoghlaw.com

David P. Whittlesey