IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2019 NOV 27  AM 11: 47
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

| | | |
|---|---|---|
| LUCAS CRANOR, INDIVIDUALLY | § | |
| AND ON BEHALF OF ALL OTHERS | § | |
| SIMILARLY SITUATED, | § | |
| PLAINTIFF, | § | |
| | § | CAUSE NO. 1-19-CV-908-LY |
| V. | § | |
| | § | |
| 5 STAR NUTRITION, LLC, | § | |
| DEFENDANT. | § | |

## ORDER GRANTING MOTION TO DISMISS

Before the court in the above-styled and numbered cause is Defendant 5 Star Nutrition, LLC's ("5 Star") Motion to Dismiss Plaintiffs' Complaint filed on October 9, 2019 (Dkt. No. 7). Plaintiff Lucas Cranor filed this suit alleging that 5 Star violated the Telephone Consumer Protection Act (the "Act") by sending advertisements in the form of text messages to Cranor. 47 U.S.C. § 227.

In response to Cranor's allegations, 5 Star filed a motion to dismiss, seeking dismissal of all of Cranor's claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Cranor responded on October 23, 2019 (Dkt. No. 11), to which 5 Star replied on October 30, 2019 (Dkt. No. 13). Having considered the motion, response, reply, and the applicable law, the court will grant 5 Star's motion.

## Background

Cranor's complaint against 5 Star arises from the receipt of a single text message. Defendant 5 Star is a Delaware corporation that operates a chain of stores that sells vitamins and supplements with its principal office or headquarters in Austin, Texas. Cranor is a citizen of the

State of Missouri.  In June of 2018, Cranor entered one of 5 Star's stores and made a purchase. In connection with that purchase, Cranor provided 5 Star with his mobile-phone number.

Cranor then received text messages from 5 Star in June 2018 and September 2018.  Both text messages were advertisements for 5 Star.  Cranor argued that both messages were unlawful because he never gave express written consent to receive them.  Cranor responded to the September 2018 message with a "Stop" request.  In November 2018, Cranor entered into a settlement agreement with 5 Star to resolve the claims related to the 2018 messages.  In the settlement agreement, both parties waive the right to bring "causes of action, claims, [or] counterclaims . . . direct or indirect . . . with respect to the Dispute and/or any facts or circumstances involved in or related to the Dispute."

The text message at issue in this case was sent by 5 Star to Cranor on or around May 2, 2019, promoting a sale.  After receiving the message, Cranor responded with a "Stop" request and does not allege to have received any subsequent text messages from 5 Star.  Cranor contends the 2019 message was made without his prior express written consent.  Cranor argues that this single text message caused him the harm that Congress sought to prevent with the Act, namely "nuisance and invasion of privacy."  Cranor asserts that the "aggravating and annoying text messages trespassed upon and interfered with [Cranor]'s rights and interests in his cellular telephone and cellular telephone line."  Further, Cranor alleges that the message depleted the battery life on his cellular telephone and used minutes allocated to Cranor by his cellular-service provider.

Defendant 5 Star's motion to dismiss alleges that, under Rule 12(b)(1), the court does not have subject-matter jurisdiction.  Specifically, 5 Star alleges that Cranor does not have Article III standing because he has not shown injury in fact.  Additionally, 5 Star moves to dismiss under Rule 12(b)(6), arguing that Cranor fails to state a claim under the Act, because he does not

properly allege that 5 Star used an automatic telephone-dialing system as required by the Act. 47 U.S.C. § 227(b)(1)(A).

Cranor responds that he has shown injury in fact, in part because there was more than one text message sent to him by 5 Star. Cranor also argues that he has sufficiently proved that the language of the Act pertaining to automatic telephone-dialing systems applies to 5 Star's system.

## Legal Standard

### A.  Federal Rule of Civil Procedure 12(b)(1)

The Federal Rules of Civil Procedure allow for the dismissal of a case when the court lacks jurisdiction over the subject matter. FED. R. CIV. P. 12(b)(1). A court should grant a Rule 12(b)(1) motion only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. *See Lane v. Halliburton*, 529 F, 3d 548, 557 (5th Cir. 2008). The party asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In deciding whether the facts establish subject-matter jurisdiction, the court may consider (1) the complaint and (2) "undisputed facts evidenced in the record." *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008).

### B.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A complaint need not contain detailed factual allegations, but in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). In considering whether this standard is met, however, a court is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  To satisfy the requirement of facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   However, a court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements, which do not permit the court to infer more than the mere possibility of misconduct."  *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245–46 (5th Cir. 2010).

## The Telephone Consumer Protection Act

Cranor initially asserts that 5 Star has violated the Act by sending him unwanted text messages.  The relevant portion of the Act at issue here reads:

> . . . It shall be unlawful for any person within the United States, or any person outside of the United States if the recipient is within the United States – (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice – . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . .

47 U.S.C. § 227(b)(1).  The Act also creates a private right of action where a person or entity may seek compensatory or injunctive relief against those who violate the act.  *Id.* at § 227(b)(3). Based on the rights created by the Act, Cranor's complaint facially appears to state a valid cause of action.

## Cranor Does Not Have Article III Standing

Under Article III of the United States Constitution, the jurisdiction of a federal court is limited to "cases" and "controversies."  U.S. CONST. art. III, § 2.  In order to have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-61 (1992)).  The motion to dismiss primarily concerns the first element of injury in fact.

The Supreme Court has ruled that "to establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S.Ct. at 1548 (citing *Lujan*, 504 U.S. at 560).  In order for an injury to be "particularized" a plaintiff is required to show that the plaintiff was affected in "a personal and individual way."  *Id.* (citing *DaimlerChrysler Corp. v. Charlotte Cuno et al.*, 547 U.S. 332, 342 (2006)).  To be "concrete," an injury must be "de facto," meaning it "must actually exist."  *Id.*  An injury need not be tangible, but it must be "real" and "not abstract."  *Id.*  For intangible injuries, "both history and the judgment of Congress play important roles" in evaluating whether the harm is injury in fact. *Id.* at 1549.  The Supreme Court has determined that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.*  However, it is still the case that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right" and that "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*

The court finds that the receipt of a single text message is not an injury in fact as required by Article III.  There is no Fifth Circuit precedent that guides this court on how to define an injury in fact for a claim arising from the Act.  However, the court finds the reasoning of other circuit courts persuasive in reaching its decision.

### A.  Text Messages Do Constitute Injury in Fact Under the Act

The court first finds that 5 Star is incorrect in its assertion that text messages do not constitute an injury in fact in violation of the Act.  There are numerous cases that find liability under the Act for text messages sent to cellular telephones.  The Eleventh, Second, Third, and Ninth Circuits have all found that text messages are sufficient forms of injury in fact in actions arising out of the Act.  *See Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019); *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85 (2nd Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3rd Cir. 2017); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017).  Further, the Supreme Court has stated that "a text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."  *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667 (2016).

### B.  A Single Text Message Does Not Constitute Injury in Fact Under the Act

Nevertheless, this court agrees with 5 Star that the single text message here does not constitute injury in fact as contemplated by the Act.  Only one circuit court has addressed the precise issue presented in this case.  The Eleventh Circuit recently found that the receipt of a single unsolicited text message is not the "concrete harm that meets the injury-in-fact requirement of Article III" and is not the type of harm recognized by the Act.  *Salcedo*, 936 F.3d at 1172.  "[A] single unwelcome text message will not always involve an intrusion into the privacy of the home in the same way that a voice call to a residential line necessarily does." *Id.* at 1170.  Instead, a single text message is "annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts." *Id.* at 1172.

### C. The Single Text Message in this Case Does Not Establish Article III Standing

This court finds the facts in *Salcedo* similar to those presented here and the Eleventh Circuit's reasoning persuasive. This case involves the receipt of a single text message. Although Cranor attempts to rely on the 2018 text messages, the previous settlement agreement prevents such reliance, directly or indirectly, in his present claim.

Cranor received the text message at issue in May 2019 and, after responding to this message with a "Stop" request, never received another. The court finds that this isolated, single text message is not an invasion of "the privacy rights [the Act] is intended to protect." *See* 47 U.S.C. 227(b)(2)(C). A single text message does not bring about the invasion of privacy that is the basis for the Act, particularly when the recipient was not sent any further text messages after the "Stop" request.

The court finds that, although the injury alleged by Cranor may be particularized, it is not concrete. Thus, Cranor does not have Article III standing for his claim. As a result, this court lacks subject-matter jurisdiction. Accordingly, because the court lacks subject-matter jurisdiction over Cranor's claims, they will be dismissed pursuant to Rule 12(b)(1). The court need not address the Rule 12(b)(6) issues raised by 5 Star.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 7) is **GRANTED** by the court for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

SIGNED this ⟨handwritten⟩ day of November, 2019.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE